UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

LOWELL J. ERGEN,

        Plaintiff,

  v.                                  Case No. 10-C-60

BRAEGER COMPANY OF WISCONSIN, INC.,

        Defendant.

---

DECISION AND ORDER
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 25),
DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION IN LIMINE (DOC. 42),
AND SETTING FINAL PRETRIAL CONFERENCE AND TRIAL DATES

On August 11, 2011, this court conducted a hearing on defendant Braeger Company of Wisconsin, Inc.'s motion for summary judgment. Preliminarily, the court reached the conclusion that plaintiff had not established a prima facie case of retaliation, and instructed Braeger's counsel to submit proposed findings of fact and conclusions of law. Thereafter, plaintiff Lowell Ergen filed a response.

Upon further review, the court determined that a continued hearing was necessary to address the issues raised regarding sufficient notice and whether Ergen had released the claims asserted in this action. During a hearing on December 9, 2011, the parties clarified that they never executed the Employment Separation Agreement appearing in the record. Based on the evidence properly before this court and the aforementioned hearing, the court now finds that genuine issues of material fact preclude summary judgment as discussed below.

FINDINGS OF FACT

Plaintiff, Lowell Ergen, was employed by Braeger Company of Wisconsin, Inc., as its Chief Operating Officer ("COO") and reported directly to Braeger's President, Todd Reardon, until Reardon terminated Ergen's employment on November 4, 2009. (Ergen Dep. 13-14.) Reardon was responsible for decisions regarding employee hiring and termination for Braeger. (Aff. Reardon, ¶ 8.) As COO, Ergen administered family and medical leave for Braeger employees pursuant to the Family and Medical Leave Act and Braeger's FMLA policy. (Ergen Dep. 67-70.)

Ergen has a son who was born in 1994 with Down's Syndrome, and Ergen would take time off work once every three months to transport his son to doctors' appointments. (Ergen Dep. 9-10.) In October of 2008, Ergen's wife was diagnosed with brain cancer, and Ergen would transport her to medical appointments approximately three times per month (usually during his lunch hour) until the date of his termination on November 4, 2009. (Ergen Dep. 6-9.) Prior to November of 2009, Ergen's only work absences related to his wife were to take her to doctor appointments approximately three times per month. (Ergen Dep. 6-7.) He scheduled a majority of the doctor visits during his lunch hour. (Ergen Dep. 8.)

Ergen never requested FMLA leave, or stated to anyone, in writing or otherwise, that he wished to be absent from work under the FMLA. (Ergen Dep. 70-71.) He did not advise Reardon that he wished to take any specific time off under the FMLA and at no time notified Braeger that he wished to exercise rights under the FMLA. (Ergen Dep. 72-83.) However, Braeger had no formal approval process that Ergen was required to follow if he wished to take family leave while fulfilling his duties in solely administering FMLA for the

company. (Ergen Dep. 69.) Braeger concedes that Reardon and other managers knew that Ergen took time off to provide care for his wife and son. Moreover, Reardon testified that he knew that Ergen drove his wife to her cancer treatments.

On November 4, 2009, Braeger terminated Ergen's employment. (Third Amended Complaint, ¶¶ 1, 8, 15.) Prior to making the decision to terminate Ergen, Reardon investigated and discussed the issue with other members of Braeger's management team, including Jason Enders and John Maneage. (Reardon Aff. ¶ 10.) Reardon also discussed the issue with his wife Amy, the other shareholder in Braeger. (Reardon Aff. ¶ 11.) When terminating Ergen, Reardon allegedly stated that other Braeger employees had to "pull harder on the oars" while Ergen was absent caring for his wife and son. (Ergen Dep. 38-39, 66-67, 74-75, 83.)

## CONCLUSIONS OF LAW

Ergen's remaining cause of action in the third amended complaint is a claim for retaliation under the FMLA. For purposes of resolving the pending motion for summary judgment and based on the concessions of Braeger's counsel that, at minimum, there is a genuine issue of fact regarding the number of employees, the court finds that Ergen is an employee to whom the FMLA applies, and that Ergen was a Braeger employee who was generally eligible for FMLA leave. In addition, Ergen's wife and son suffered from serious medical conditions within the meaning of the FMLA and Ergen was terminated by Braeger on November 4, 2009.

Under the FMLA, an eligible employee is entitled to up to twelve weeks of unpaid leave each year for a "serious health condition" that makes the employee unable to perform the functions of her job. 29 U.S.C. § 2612(a)(1)(D); *Darst v. Interstate Brands*

3

*Corp.*, 512 F.3d 903, 908 (7th Cir. 2008). The FMLA contains an anti-retaliation provision, making it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).

To succeed on a FMLA retaliation claim, a plaintiff does not need to prove that retaliation was the only reason for his termination; he may establish an FMLA retaliation claim by showing that the protected conduct was a substantial or motivating factor in the employer's decision. *Goelzer v. Sheboygan County*, Wis., 604 F.3d 987, 995 (7th Cir. 2010) (citation omitted) (emphasis in original). Nevertheless, a plaintiff alleging a FMLA retaliation claim must establish that he was eligible for FMLA leave in the first instance. *See Daugherty v. Wabash Ctr., Inc.*, 577 F.3d 747, 750 (7th Cir. 2009).

A plaintiff may proceed under the direct or indirect methods of proof. *Goelzer*, 604 F.3d at 994. The direct method requires a showing of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Caskey v. Colgate–Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008). Direct evidence typically consists of an admission by the decision maker that he acted with retaliatory intent. *Id*. Circumstantial evidence allows the finder of fact to infer that retaliatory animus motivated the decision maker to take an adverse employment action against the employee. *Id.*

Under the indirect method, a plaintiff must demonstrate: (1) he engaged in statutorily protected activity; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated

4

employees who did not engage in statutorily protected activity. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625 (7th Cir. 2009). The presumption shifts the burden to the employer to produce a legitimate, noninvidious reason for its actions. *Id.* Then, if the employer satisfies its burden of production, the burden then shifts back to the plaintiff to show the reasons are false and only a pretext. *Id.*

Under either method, Ergen must show that he engaged in a statutorily protected activity. Generally speaking, it does not take much for an employee to invoke his FMLA rights. *Righi v. SMC Corp.*, 632 F.3d 404 (7th Cir. 2011). The applicable regulations make clear that an employee "need not expressly assert rights under the FMLA or even mention the FMLA" in order to invoke his rights; he need only note that leave is requested for some reason covered by the FMLA. 29 C.F.R. § 825.303(b). Ordinarily, an employee's statement to his employer indicating that he needs leave to care for a seriously ill relative would be sufficient to invoke the protections of the FMLA. *Id.* The

On the issue of whether Ergen engaged in a statutorily protected activity, there is evidence that: (1) Ergen had sole responsibility for handling employees' requests for FMLA leave; (2) Ergen, as Chief Operating Officer, could take leave without asking permission from Reardon or anyone else at Braeger; (3) Ergen did not feel he had to write a letter each time he took his wife to a doctor because Braeger's employee handbook contains a medical leave policy that states an employee "must request a leave of absence if they will be unable to work for medical reasons for a period in excess of three consecutive days; (4) Ergen took hours at a time rather than days to transport his wife to appointments for her brain tumor; and (5) co-managers and Reardon knew that Ergen's wife and son suffered serious health conditions and that Ergen took leave from work to drive his wife to cancer

5

5

treatments. Indeed, Ergen's co-managers and Reardon knew Ergen well. He began his employment with Braeger Chevrolet, Inc., on October 30, 1973, and worked for various entities associated with Braeger over the course of thirty six years. At the time of his termination, Ergen was the COO of three dealerships. No one claims that they did not know Ergen's wife had a brain tumor or that Jacob had Down's Syndrome.

Braeger places great weight on the absence of any documentation supporting an FMLA request. Nevertheless, Ergen testified as follows in his deposition:

> Well, I believe that in the Medical Leave Act, I would prepare a letter if I'm going to be on an extended leave, but because it was hours at a time that I was taking, I didn't feel that it was necessary to write up letters each time that my wife was going to the doctor, so yes, I believe I was under the Medical Leave Act, but no, there was no documentation given.

Taking the evidence in the light most favorable to Ergen as the court must at this stage of the proceedings, Ergen engaged in a statutorily protected activity and was terminated.

Turning to the issue of causation, a reasonable jury could that the protected conduct was a motivating factor in Braeger's decision to terminate Ergen's employment. At paragraph 27 of his affidavit, Ergen avers that Reardon said that other managers could not work with him anymore because they have had to pull on the oars a lot harder since Ergen had been taking Chris and Jacob to the doctor and that Reardon didn't feel he could trust Ergen anymore. Similarly, in his deposition, Ergen testified as follows about his conversation with Reardon at the time of his termination:

> Q    And what was discussed at that time?
> A    That he wasn't going to change his mind, that he could sit there as long as I wanted him to sit there, and I could talk to him. He didn't feel he could trust me, and that Jason, Al, and John were pulling on the oars a lot harder since I had been out.

6

Ergen explained "he was saying that they had to do extra work while I was taking care of my wife." Reardon generally admits to the statement, but offers another explanation. The question of who to believe is a credibility determination for the jury.

Having denied Braeger's motion for summary judgment, a portion of defendant's motion in limine remains. At the hearing on July 28, 2011, this court denied defendant's motion in limine to preclude evidence as to the health conditions of Christine Ergen and Jacob Ergen. Ergen does not oppose Braeger's request to exclude evidence of dismissed claims. Hence, the only portion of the motion still pending seeks to exclude evidence relating to the employment of Jason Enders and Jennifer Brandt.

Former employees Jason Enders and Jennifer Brandt were identified in the pretrial report as potential witnesses. Both secured employment with other companies but were convinced by Braeger to continue with or to return to Braeger. This evidence is relevant to the extent that Braeger argues that Ergen was fired after they discovered his resume on a thumb drive even though the resume may have been sent out two years earlier to non competing companies. Reardon claims he terminated Ergen based on a lack of trust.

Braeger asserts that Enders and Brandt are not similarly situated and that the facts relating to their employment would only confuse the issues at trial. Although Enders was upper management, he sought alternative employment in 2004 before Reardon purchased Braeger Company of Wisconsin, Inc. Braeger's previous owner, Reardon's father in law, decided to retain Enders and the alternative employment in Davenport, Iowa, has nothing to do with how Reardon responded to Ergen. Similarly, Brandt is distinguishable because she was not a member of upper management and sought alternate employment with a non-competing automobile dealer in Sheboygan, Wisconsin.

This motion will be denied without prejudice. In their responses to plaintiffs' August 10, 2010 interrogatories and requests for documents, Brager answered Interrogatory No. 17, in part, by stating that "Braeger has a general practice of terminating any employee who is looking for alternative employment." (Doc. 33-10.) It appears that Enders and Brandt applied for jobs with other dealerships while employed by Braeger. Enders was convinced by Reardon to stay with Braeger even though Reardon's father in law owned Braeger when that decision was made. Meanwhile, Brandt worked six months for another dealership and was persuaded by Maneage, another member of the management team, to return to Braeger to continue handling Braeger's confidential financial and insurance matters while Reardon owned the company. Any ruling excluding such evidence at this time would be premature. Now, therefore,

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that defendant's motion in limine is denied without prejudice. (Doc. 42.)

IT IS FURTHER ORDERED that the parties shall appear for a final pretrial conference on May 24, 2012, at 8:30 a.m.

IT IS FURTHER ORDERED that the parties shall proceed to trial on June 4, 2012, at 8:30 a.m.

Dated at Milwaukee, Wisconsin, this 23rd day of December, 2011.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE